

# NUMBER 13-22-00238-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER GEORGE VEGA,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

A jury convicted appellant Christopher George Vega of unlawful possession of a firearm, a third-degree felony, and possession of a controlled substance in penalty group one, less than one gram, a state-jail felony. *See* TEX. PENAL CODE ANN. §§ 22.01(b)(2)(A); 46.04. The jury sentenced him to three- and a-half years' imprisonment and one year

imprisonment, respectively. By two issues, Vega argues: (1) the evidence is legally insufficient to support his conviction for unlawful possession of a firearm; and (2) the trial court erred by submitting a jury charge which precluded a defense theory. We affirm.

## I.    BACKGROUND

At trial, Senior Patrol Officer Isaac Kimbrough with the Victoria Police Department testified that on September 21, 2021, he conducted a traffic stop and made contact with Vega. Officer Kimbrough observed Vega show signs of nervousness, he was shaky, sweaty, avoided eye contact, and tried to divert conversation away from the traffic stop. A video recording from Officer Kimbrough's body worn camera was admitted into evidence. In the video, Vega informed Officer Kimbrough that he did not have identification or insurance but that he lived down the road that he pointed to.

Officer Kimbrough then asked Vega whether there was anything illegal in the vehicle. At first, Vega denied there was anything illegal in the vehicle, but when Officer Kimbrough asked if he could search it, Vega stated, "[T]he most you will find will probably be some roaches."[1] When Vega denied consent to search the vehicle, Officer Kimbrough requested a K-9 to conduct an air sniff.

Following the K-9's positive alert, Officer Kimbrough searched Vega's vehicle and found a single marijuana "roach" and a methamphetamine pipe. In the trunk of the vehicle, he located a backpack containing a nickel-plated firearm and what Officer Kimbrough believed to be synthetic marijuana and methamphetamine. Vega informed Officer

---

[1] Officer Kimbrough stated a roach "is basically the leftover or the smallest bit to where they've smoked a marijuana joint."

2

Kimbrough that he was allowed to possess a firearm because five years had passed since he was charged with a felony offense.

Officer Kimbrough tested the residue in the pipe for methamphetamine, which resulted in a positive test. He then arrested Vega for possession of a controlled substance and unlawful possession of a firearm.

Vega testified that at the time of the traffic stop, he and his wife were residing inside his vehicle because he was evicted from his apartment. He added that he resorted to showering at his mother's house or friends' houses. According to Vega, initially, he was not truthful with Officer Kimbrough about his residency because he hoped the officer would cite and release him. Vega explained that it had been almost ten years since he had been released from prison. Based on the fact that it had been more than five years since he had been discharged, he thought his "gun rights were restored."

During cross-examination, Vega admitted that he lied to Officer Kimbrough at least three times: (1) he told Officer Kimbrough that he was employed at J&R Steel when he was not; (2) he told Officer Kimbrough that he lived at the house down the street when in fact he resided in his car; and (3) he told Officer Kimbrough there was nothing illegal in his vehicle.

At the charge conference, Vega requested that the trial court include an instruction on "mistake of law," arguing that Vega was under the impression he could possess a firearm. The trial court denied the instruction. The jury convicted Vega, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Vega argues that the evidence was insufficient to support his conviction for unlawful possession of a firearm. Specifically, Vega argues that the State failed to prove that he possessed a firearm at any location other than the premises he lived. *See id.* § 46.04(a)(1).

### A. Standard of Review and Applicable Law

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). We review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. To establish unlawful possession of a firearm by a felon, the State must prove the defendant: (1) was previously convicted of a felony offense; (2) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony"; (3) the defendant possessed a firearm at any location other than the premises where the person lived. *See* TEX. PENAL CODE ANN. § 46.04(a).

## B.    Analysis

Here, Vega does not dispute that he was a convicted felon, and he stipulated to that fact at trial. The evidence was also undisputed that Vega possessed a firearm in the vehicle he was driving when he was stopped by Officer Kimbrough. Vega informed Officer Kimbrough that he was living at the 1400 block of Navidad Street, and he is seen pointing to that exact location, his mother's residence, several times in the body cam video. Thus, the jury could have reasonably found that Vega was living at his mother's residence, not in his vehicle, and therefore possessed a firearm at a location where he did not live. *See Sharif v. State*, 640 S.W.3d 636, 643 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

"Even if the evidence conclusively established appellant was living in his automobile at the time of his arrest, the evidence would still be sufficient because the

5

obvious intent of the statute proscribing possession of firearms by convicted felons is to keep violent offenders from going about with firearms." *Id.* (internal quotation marks omitted). A convicted felon is "not entitled to possess a firearm wherever they are or wherever they stay" and "may only possess a firearm where they live, within the meaning and intent of the statute." *Id.* "Premises" means "real property" or motor vehicle "primarily designed as temporary living quarters" including a "travel trailer, camping trailer, truck camper, motor home, and horse trailer with living quarters." *See* TEX. PENAL CODE ANN. § 46.02 (a–2). Therefore, Vega's vehicle could not serve as a "premises" under [§] 46.04 of the penal code." *See id.*; *Nesbit v. State*, 720 S.W.2d 888, 891 (Tex. App.—Austin 1986, no pet.) ("Failure to have a place to live cannot transform an ordinary pickup into a premise for living simply because one may sleep in it."). Accordingly, we overrule Vega's first issue.

### III. JURY CHARGE

By his second issue, Vega argues he suffered egregious harm because the trial court failed to instruct the jury that his vehicle was his "premises" for purposes of § 46.04.

We review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists. Then we determine whether sufficient harm was caused by the error. *See id.* Vega concedes that he did not raise this objection at trial. Therefore, reversal is required only if error occurred and Vega suffered egregious harm such that he did not have a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

On appeal, Vega argues that the charge instructed the jury that a "residence" could

6

not be his vehicle thereby precluding the jury from considering a legal defense. He asserts that he was homeless and living out of his vehicle; therefore, his vehicle was his "premises." However, Vega did not have a legal defense that was foreclosed by the trial court's charge because the penal code does not provide for a person's vehicle to be the "premises at which he lives." *See* TEX. PENAL CODE ANN. § 46.02(a-2); *Sharif*, 640 S.W.3d at 645 (concluding that the trial court did not err when the jury's charge defined "premises" as a "building or portion of a building" thereby leaving the jury without a means to find that appellant's vehicle was his "premises"). Because the trial court did not err in failing to instruct the jury that Vega's vehicle was his "premises," we overrule Vega's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
4th day of January, 2024.