**Opinion issued July 30, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00166-CR**

———————————

**CRAIG SYLVESTER WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 482nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1807566**

---

## MEMORANDUM OPINION

A jury found appellant Craig Sylvester Williams guilty of the offense of unlawful possession of a firearm by a felon. Appellant pleaded true to two enhancement paragraphs, and the trial court assessed his punishment at twenty-five years' confinement. In one issue, appellant contends that the evidence is insufficient

to support his conviction because the State failed to prove beyond a reasonable doubt each element of the alleged offense. We affirm.

## Background

On Feb. 17, 2023, appellant was charged by indictment with unlawful possession of a firearm by a felon. The indictment, which included two enhancement paragraphs, read:

> [I]n Harris County, Texas, **CRAIG SYLVESTER WILLIAMS,** hereafter styled the Defendant, heretofore on or about **June 12, 2021,** did then and there unlawfully, intentionally and knowingly possess a firearm at a location other than the premises at which the Defendant lived, after being convicted of the felony offense of Possession of a Controlled Substance in the District Court of the 177th Judicial District, Harris County, Texas, in Cause Number 1673312, on January 13, 2021.

> Before the commission of the offense alleged above, (hereafter styled the primary offense), on September 30, 1996, in Cause Number 718655, in the 180th District Court of Harris County, Texas, the Defendant was convicted of the felony offense of Felon in Possession of a Weapon.

> Before the commission of the primary offense, and after the conviction in Cause Number 718655 was final, the Defendant committed the felony offense of Felon in Possession of a Weapon and was finally convicted of that offense on August 23, 2007, in Cause Number 1122281, in the 176th District Court of Harris County, Texas.

Appellant pleaded not guilty to the charged offense, and the case proceeded to trial.

After voir dire, appellant stipulated to the jurisdictional offense of felony possession of a controlled substance. Following opening statements, the State called

2

the following witnesses: Houston Police Department (HPD) Sergeant G. Pulatie and HPD Officers N. Davis, B. Real, J. Lopez, and B. Karlsen.

### 1.     Sergeant Pulatie

Sergeant Pulatie worked with HPD's Gang Division, Crime Reduction Unit. On June 12, 2021, he responded to a call from dispatch about a shooting in progress at a nearby location. When he arrived at the apartment complex, he saw someone shot lying on the ground. Sergeant Pulatie testified that while he was at the scene an individual told him that a vehicle had left the scene and gave him a description of the vehicle. Afterwards, Sergeant Pulatie broadcast the vehicle description on the radio so that other officers in the vicinity could be on the lookout.

Sergeant Pulatie testified that the vehicle was later found at the intersection of the North Freeway and Glenburnie Drive, approximately one-quarter mile from the apartment complex. He testified that the apartment complex and the location where appellant's vehicle was found are in Harris County. When Sergeant Pulatie arrived at the location where appellant's vehicle was located, appellant was standing next to the vehicle and the front passenger door was open. Upon a search of the vehicle, officers at the scene discovered a semiautomatic handgun. Sergeant Pulatie testified that there were two bullet holes in the front of appellant's vehicle.

### 2. Officer Davis

HPD Officer Davis was working the night shift at the North Patrol Division on June 12, 2021. While responding to a call involving a shooting in progress at the Beatrix apartment complex, Officer Davis came upon a black Range Rover stalled in a moving lane of traffic at the intersection of the North Freeway and Glenburie. Officer Davis testified that the stalled vehicle matched the description of the vehicle involved in the shooting-in-progress call and was located a block from the scene of the shooting. When Officer Davis arrived at the scene, appellant was standing outside the vehicle, with the passenger door open, and digging around inside the vehicle. When he asked appellant where he was coming from, appellant replied that he was coming from Dago's, a tattoo parlor adjacent to the apartment complex where the shooting occurred. Believing that appellant might be the shooting suspect, Officer Davis patted him down and put him in the back of his patrol car. Officer Davis testified that appellant told him that the stalled vehicle belonged to him and that it had run out of gas.

### 3. Officer Real

HPD Officer Real was assigned to the night shift patrol from 11:00 p.m. to 7:00 a.m. on June 12, 2021. Officer Real arrived at the location of the stalled vehicle as Officer Davis was detaining appellant. Officer Real testified that he searched appellant's vehicle and discovered a gun with an empty magazine in the back

passenger seat. Officer Real testified that he also found a bullet casing in the pocket of the driver's side door which indicated that someone had fired a weapon from inside the vehicle.

### 4. Officer Lopez

HPD Officer Lopez was working with the Gang Division, Crime Reduction Unit on June 12, 2021. He testified that when he arrived at the location of the stalled vehicle, appellant was in the back seat of a patrol car. Officer Lopez testified that he spoke with appellant for about ten minutes to build a rapport with him. Appellant and Officer Lopez talked about Spring, Texas, where appellant lived, and appellant told him that his son had graduated from Spring High School. Officer Lopez told appellant that he knew the area where appellant lived because he had also graduated from Spring High School.

Officer Lopez testified that appellant initially told him that he had been working at Dago's and talking to a female who he planned to meet at the apartment complex. Appellant stated that as soon as he pulled into the complex he heard gunshots, so he backed out and left the complex. As appellant was driving up the road he ran out of gas. Officer Lopez testified that when Officer Karlsen asked appellant where he got the firearm, appellant told him that he bought it off the street in Spring. Officer Lopez testified that when he asked appellant about the blood on his hands, appellant changed his story. Appellant stated that when he pulled into the

5

complex to meet the woman, a man ran up to his car and appellant got out and fought him. Appellant stated that he knocked the other man out and then returned to his car and waited for the female for ten minutes. Appellant told him that he then heard gunshots and drove away. Officer Lopez testified that appellant changed his story again and told him that after he knocked the man out, he heard gunshots and returned fire.

### 5. Officer Karlsen

Officer Karlsen testified that he was assigned to North Patrol night shift on June 12, 2021. At 11:16 p.m., Officer Karlsen was dispatched to a shooting at an apartment complex at 5135 North Freeway. Officer Karlsen testified that he spoke to appellant after officers brought him back to the scene of the shooting. Officer Karlsen testified that, during their exchange, appellant tilted his head toward the parking lot of the apartment complex to indicate where the shooting had occurred. Officers found three silver 9-millimeter bullet casings at the scene of the shooting—two of them were found in the parking lot fifteen feet away from where the shooting occurred and one was found in the driver's side door panel of appellant's vehicle. Officer Karlsen testified that the weapon recovered from appellant's vehicle was a .9 mm gun.

Following this testimony, the State tendered Exhibit 10, a Judgment of Conviction signed by appellant, which the trial court admitted into evidence. The

exhibit showed that appellant had been convicted of felony possession of a controlled substance on January 13, 2021 and sentenced to 180 days' confinement. The judgment also included a written admonishment stating that appellant was ineligible under Texas law to possess a firearm or ammunition.

After both sides rested, the jury found appellant guilty of the charged offense of possession of a firearm by a felon. The trial court assessed his punishment at twenty-five years' confinement. This appeal followed.

## Discussion

In one issue, appellant contends that the evidence is insufficient to support his conviction because the State failed to prove each element of the offense of possession of a firearm by a felon. The State responds that the evidence is sufficient to support appellant's conviction.

### A.     Standard of Review

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an

element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See id.* at 314, 318 n.11, 320; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). The jury is the sole judge of the credibility of witnesses and the weight to give their testimony, and our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

## B. Applicable Law

Texas Penal Code section 46.04 makes it an offense for a person who has been convicted of a felony to possess a firearm. TEX. PENAL CODE § 46.04. Under the statute, a convicted felon commits an offense by possessing a firearm anywhere before the fifth anniversary of his release from confinement or supervision. *Id.* § 46.04(a)(1). After the fifth anniversary of his release from confinement or supervision, a convicted felon commits an offense by possessing a firearm anywhere other than his home. *Id.* § 46.04 (a)(2).

## C. Analysis

Appellant argues that the State failed to present evidence proving the location of his residence and therefore that he possessed a firearm at a place other than the

premises where he lived.[1] He asserts that theoretically he could have (1) resided at another apartment at the same complex as the woman he planned to meet, (2) had no actual physical residence and was going to stay at the woman's apartment, (3) been homeless and resided in his vehicle, or (4) had a residence at another location.

The jury heard evidence that the Beatrix apartment complex where the shooting occurred was located at 5135 North Freeway, and that appellant's stalled vehicle was discovered nearby at the intersection of the North Freeway and Glenburnie Drive. Officer Lopez testified that he spoke with appellant for ten minutes, and that appellant told him that he lived in Spring. Officer Lopez also testified that appellant changed his story several times. When asked where he had been coming from before his vehicle ran out of gas off the North Freeway, appellant initially stated that he had left Dago's where he worked to meet a woman at the apartment complex. Appellant later stated that he entered the complex to meet the woman, fought a man who he then knocked out, and drove off when he heard gunshots. Appellant changed his story yet again and told Officer Lopez that after he knocked the man out, he heard gunshots and returned fire. None of the places identified—Dago's, the apartment complex, or the road where he ran out of gas— are in Spring where appellant lived.

---

[1]     Appellant does not challenge the sufficiency of the evidence to support any of the other elements of the charged offense.

The jury also heard testimony about why appellant went to the Beatrix apartment complex. Appellant told officers that he went to the apartment complex to meet a woman, not because it was where he lived. However, even if he had been a resident at the complex or staying with the woman he met, the evidence showed that the shooting at the complex took place between the street and the parking lot. Neither is considered a "premises" for a resident of an apartment complex. *See, e.g.*, *Shepperd v. State*, 586 S.W.2d 500, 504 (Tex. Crim. App. 1979) (upholding jury finding that appellant was guilty of unlawful possession of firearm by felon, considering phrase "away from the premises where he lives," and determining that "adjacent parking lot is not part of the premises where one lives"); *Bryant v. State*, 508 S.W.2d 103, 104 (Tex. Crim. App. 1974) (holding that tenant who had pistol in his hand while standing in parking lot shared by other occupants of apartment complex was not on "one's own premises" within its meaning under unlawful carrying of firearms statute); *Wilson v. State*, 418 S.W.2d 687, 688 (Tex. Crim. App. 1967) (holding that tenant who carries pistol upon grass, sidewalks, driveway, and parking lot jointly used by all tenants of large apartment complex is not on "one's own premises" within meaning of statute relating to unlawful carrying of firearm); *see also Thomas v. State*, No. 05-16-01103-CR, 2018 WL 3654908, at *4 (Tex. App.—Dallas Aug. 2, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant was in possession of firearm at location "other than the

10

premises at which [he] lived" where evidence showed he shot complainant in apartment complex parking lot); *Ervin v. State*, No. 0-07-00207-CR, 2008 WL 5263635, at *4 (Tex. App.—Houston [1st Dist.] Dec 18, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding there was no evidence to support finding that appellant was on his own premises at time of shooting where evidence showed appellant and complainant walked down apartment complex's second story breezeway toward common stairwell where appellant shot complainant).

The evidence further showed that appellant possessed a firearm at other places which were not the premises where he lived. Appellant told officers that he was coming from Dago's—his workplace, not his residence—which was adjacent to the apartment complex where the shooting occurred. The evidence also showed that appellant possessed the firearm at the time police discovered his stalled vehicle at the intersection of the North Freeway and Glenburnie Drive—a location that is also not the premises where he lived.

Appellant's argument that he could have been homeless and residing in his vehicle at the time he possessed the firearm is unavailing. There was no evidence to support such a finding; rather, the undisputed evidence showed that appellant lived in Spring at the time he possessed the firearm that officers discovered in the back of his stalled vehicle. *See Sharif v. State*, 640 S.W.3d 636, 643 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (finding sufficient evidence supported finding that

defendant was living at his mother's residence, not in his vehicle, and therefore possessed firearm at location where he did not live, as required for conviction of being felon in possession of firearm; evidence was undisputed that defendant possessed firearm in vehicle he was driving when stopped by police, there was no evidence that defendant was homeless and living in his vehicle, and defendant testified that he was living at his mother's residence at time he was stopped); *see also Nesbit v. State*, 720 S.W.2d 888, 891 (Tex. App.—Austin 1986, no pet.) ("Failure to have a place to live cannot transform an ordinary pickup into a premises for living simply because one may sleep in it."). As the sole judge of the credibility of witnesses and the weight to give their testimony, the jury was free to conclude that the vehicle was not appellant's residence. *See Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (noting jury may reasonably infer facts from evidence presented, credit witnesses it chooses, disbelieve any or all of evidence or testimony proffered, and weigh evidence as it sees fit).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that appellant possessed a firearm at a place other than the premises where he lived. *See Jackson*, 443 U.S. at 318–19. We therefore hold that the evidence is sufficient to support appellant's

conviction for the offense of unlawful possession of a firearm by a felon. We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Farris and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).